NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>   v.<br><br>KAI BOWMAN, JR.,<br><br>                        Defendant. | Crim. No. 24-534 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon the Government's Motion *in limine*, wherein the Government requests a ruling on the admissibility of two categories of evidence that it seeks to offer at trial. (ECF Nos. 257 & 259.) Defendant Kai Bowman, Jr. did not file an opposition. The Court has carefully considered the Government's submission and decides the Motion without oral argument pursuant to Local Civil Rule 78.1(b).[1] For the reasons set forth below, and other good cause shown, the Government's Motion *in limine* is **GRANTED**.

**I.    BACKGROUND**

    On August 22, 2024, Defendant was indicted for one count of knowingly possessing with the intent to distribute a mixture and substance containing a detectable amount of fentanyl and heroin in violation of 21 U.S.C. §§ 841(a)(l) and (b)(l)(C). (ECF No. 238.) The charge stems from an investigation of unlawful drug trafficking in and around Trenton, New Jersey by the Federal Bureau of Investigation (FBI) and other law enforcement agencies. (ECF No. 257 at 2.) According

---

[1]    Local Civil Rule 78.1 applies to criminal cases in this District. *See* L. Cr. R. 1.1.

to the Government, it "obtained court authorization to intercept telephonic and electronic communications occurring over Jamal Wilson's cellular phone number from in or around May 2022 and continuing through in or around August 2022."[2] (*Id.*) The Government contends that the "telephone calls and text messages intercepted over these telephone facilities, combined with physical and video surveillance, revealed, among other things, that from May 24, 2022, until his arrest on July 5, 2022, [Defendant] routinely ordered significant quantities of heroin from Wilson." (*Id.*) The Government further alleges that after Defendant was arrested on July 5, 2022, officers searched Defendant and found, among other things, 554 wax folds of suspected heroin, which later tested positive for a detectable amount of heroin and fentanyl. (*Id.* at 6.)

## II. LEGAL STANDARD

### A. Motions *In Limine*

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Courts often rule on *in limine* motions to exclude or admit certain evidence to "shield the jury from unfairly prejudicial or irrelevant evidence." *Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002). "The *in limine* motion then fosters efficiency for the court and for counsel by preventing needless argument at trial." *Id.* "Because a ruling on a motion *in limine* is subject to change as the case unfolds, this ruling constitutes a preliminary determination in preparation for trial." *United States v. Browne*, Crim. No. 20-965, 2022 WL 1063953, at *1 (D.N.J. Apr. 8, 2022) (quoting *United States v. Perez*,

---

[2] On August 15, 2022, Jamal Wilson, Defendant and several others were charged in a Criminal Complaint with various drug-related offenses. (ECF No. 1.)

Crim. No. 09-1153, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (internal quotation marks omitted).

### III. DISCUSSION

In its Motion *in limine*, the Government requests a ruling on the admissibility of two categories of evidence that it seeks to offer at trial, both of which concern alleged drug purchases made by Defendant: (1) phone calls and text messages between Defendant and Wilson from June 25, 2022, to July 2, 2022 (prior to the date of Defendant's arrest); and (2) phone calls between Defendant and Wilson on July 5, 2022 (the date of Defendant's arrest). The Court addresses each in turn.

    **A.    Phone Calls and Text Messages from June 25, 2022, to July 2, 2022 (Government's Exhibits 5, 6 and 200 through 213)**

The Government first seeks to admit "phone calls and text messages exchanged between [Defendant] and Wilson on five occasions leading up to [Defendant]'s arrest on July 5, 2022, for proper, non-propensity purposes, including to establish [Defendant]'s knowledge, intent, plan, absence of mistake, and lack of accident." (ECF No. 257 at 7.) According to the Government, the phone calls and text messages show Defendant and Wilson using coded language[3] to discuss the sale of significant quantities of drugs. For instance, the Government contends that the following phone call from June 25, 2022, shows Defendant ordering drugs from Wilson:

    WILSON: Yo. Yo.

    DEFENDANT: Give me four t-shirts when you come back.

    WILSON: Alright cool. Give me a minute.

    DEFENDANT: Alright.

---

[3]    The Government writes that it anticipates calling an FBI special agent as a witness to explain the coded communications between Defendant and Wilson. (ECF No. 257 at 2 n.3.)

(*Id.* at 2-3.)  The Government also seeks to admit a phone call and a series of text messages from June 29, 2022, which purportedly show Defendant and Wilson discussing a drug transaction to take place at Garfield Park, the same location where Defendant is alleged to have purchased drugs on the date of his arrest.  The phone call from the morning of June 29, 2022, is transcribed as follows:

> WILSON: Yo my boy.
>
> DEFENDANT: You comin' out today?
>
> WILSON: Yeah.  Yeah.  Bitch, I'll be out in a couple minutes.
>
> DEFENDANT: Alright.  Let me get uh, three t-shirts and Green Goblins.
>
> WILSON: Who?
>
> DEFENDANT: Three t-shirts and Green Goblins.
>
> WILSON: Alright.  You're gonna have to uh, bitch I ain't going to meet you up there bitch.  I ain't going nowhere up there.
>
> DEFENDANT: That's fine by me.
>
> WILSON: Alright.  Cool I hit you.
>
> DEFENDANT: Alright.

(*Id.* at 3-4.)  Text messages exchanged between Defendant and Wilson from later that day are reproduced below:

> DEFENDANT: Never told where u wanted to meet.
>
> WILSON: I didn't forget.
>
> DEFENDANT: Oh nah . . . just I gotta get ready for work soon.
>
> WILSON: Okay.
>
> WILSON: Send the numbers.
>
> DEFENDANT: 4 & 1.
>
> WILSON: Garfield Park.

    DEFENDANT: Oh . . . here i come.

(*Id.* at 4.) The Government submits that these and other similar phone calls and text messages from the days leading up to Defendant's arrest are admissible under Federal Rule of Evidence (Rule) 404(b).

  Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See also United States v. Foster*, 891 F.3d 93, 108 (3d Cir. 2018) ("Evidence of uncharged wrongful acts satisfies the non-propensity step for Rule 404(b) admissibility when it is admitted for a purpose "that is 'probative of a material issue other than character.'" (quoting *United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010))). "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *Green*, 617 F.3d at 249 (citing *United States v. Butch*, 256 F.3d 171, 175 (3d Cir.2001)).

  In terms of the first and second prongs, which courts often analyze together,[4] the Government argues that the evidence of phone calls and text messages from the days leading up to Defendant's arrest are admissible to "prove knowledge, intent, dispel any notion of accident or mistake, and provide relevant background information of the crime." (ECF No. 257 at 13.) According to the Government, where a defendant's intent is at issue, courts regularly admit evidence of the defendant's prior acts under Rule 404(b). (*Id.* at 8.) The Government submits that

---

[4]  *See United States v. DeMuro*, 677 F.3d 550, 563 (3d Cir. 2012) ("[W]e consider in steps one and two whether the evidence was relevant to a proper purpose under Rule 404(b).").

evidence of Defendant making multiple purchases of drugs from Wilson within a short period of time supports that Defendant possessed drugs with an intent to distribute them, which the Government must prove at trial.[5]  (*Id.* at 10.)  The Government further argues that this evidence "should be admitted to provide background information about the parties and other actors around whom this crime revolves."  (*Id.* at 11.)  In particular, the Government contends that the evidence contextualizes the relationship between Defendant and Wilson.  (*Id.*)

As to the third prong, the Government argues that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to Defendant.  The Government highlights that it only seeks to introduce a handful of communications, all of which occurred within two weeks of the charged offense and feature the same use of coded language as the calls from the day of Defendant's July 5, 2022 arrest.  (*Id.* at 12.)  Moreover, even though the "other acts" shown in the Government's exhibits are similar to what is charged in the indictment, the Government asserts that the United States Court of Appeals for the Third Circuit has upheld the introduction of similar or even more prejudicial evidence, including drug convictions.  (*Id.* (citing *Butch*, 256 F.3d at 176 and *United States v. Givan*, 320 F.3d 452, 461-62 (3d Cir. 2003)).)  Finally, the Government argues that any prejudice can be cured by a limiting instruction, and it proposes that the Court use an instruction based on the Third Circuit's Model Jury Instructions.  (*Id.*)

Here, the Court finds that the phone calls and text messages between Defendant and Wilson are relevant and are being offered for a proper, non-propensity purpose.  "A proper purpose is one that is 'probative of a material issue other than character.'"  *Green*, 617 F.3d 233, 250 (3d Cir.

---

[5]  At trial, the Government must prove: (1) that Defendant possessed a mixture or substance containing a controlled substance; (2) that Defendant possessed the controlled substance knowingly or intentionally; (3) that Defendant intended to distribute the controlled substance; and (4) that the controlled substance was heroin or fentanyl.  *See* Third Circuit Model Jury Instructions, Criminal Sec. 6.21.841A (2024).

2010) (citation omitted). The communications being offered by the Government are probative of Defendant's intent to possess and distribute drugs and, relatedly, are probative of Defendant's knowledge and lack of accident as to his possession and distribution. *See United States v. Jackson*, 619 F. App'x 189, 193 (3d Cir. 2015) ("[E]vidence of past distribution is relevant to prove intent to distribute in a later distribution trial, even to the extent of admitting prior convictions as well as uncharged conduct."); *United States v. Addison,* Crim. No. 23-118, 2025 WL 388853, at *9 (W.D. Pa. Feb. 3, 2025) (holding that text messages showing the defendant referring to drug stamps used in the area were relevant and admissible for the proper purpose of showing "knowledge of possession and intent to deliver controlled substances"). The communications are also relevant to provide background about the relationship between Defendant and Wilson. *See Green*, 617 F.3d at 250 ("[O]ne proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact.").

The Court further concludes that the probative value of admitting the evidence is not "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see also United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002) ("[E]vidence can be kept out only if its unfairly prejudicial effect substantially outweighs its probative value. . . . As one example, when evidence is highly probative, even a large risk of unfair prejudice may be tolerable.") (cleaned up). As discussed above, the evidence here is probative of, among other things, Defendant's intent to possess and distribute drugs. Moreover, the Government only seeks to introduce a few brief communications, all of which occurred shortly before Defendant was arrested. Courts have routinely admitted evidence of past drug distribution under Rule 404(b). *See Givan*, 320 F.3d at 461 (following the defendant's conviction of possession with intent to distribute heroin, finding the admission of the defendant's felony drug conviction from six years prior was not an abuse of

7

discretion); *United States v. Duggan*, Crim. No. 19-3220, 2021 WL 5745686, at *2 (3d Cir. Dec. 2, 2021) ("The probative value of [the defendant's] previous drug trafficking is obvious and consistent with our precedent."); *United States v. Lopez*, 340 F.3d 169, 174 (3d Cir. 2003) (collecting "recent decisions of this court upholding the admission of evidence of prior drug involvement for the purpose of rebutting defense claims of innocent association, and to prove criminal intent."); *Addison*, 2025 WL 388853, at *9 (finding the "danger of unfair prejudice" of admitting drug trafficking communications did "not substantially outweigh the probative value because evidence of prior drug distribution goes directly to [the defendant's] knowledge and intent which is a crucial aspect of the case").

To guard against potential prejudice to Defendant, the Court will issue a limiting instruction consistent with the Third Circuit's Model Jury Instructions. *See United States v. Lee*, 612 F.3d 170, 191 (3d Cir. 2010) (rejecting the defendant's challenge to Third Circuit Criminal Model Jury Instruction 4.29); *Givan*, 320 F.3d at 461-62 (noting that the district court's limiting instruction "minimize[d] any prejudicial effect" of admitting the defendant's prior drug crime).

Accordingly, the Government's Motion *in limine* to introduce evidence of phone calls and text messages between Defendant and Wilson from June 25, 2022, to July 2, 2022 (Government's Exhibits 5, 6 and 200 through 213) is granted.[6]

---

[6] At trial, the Government may introduce this evidence in its case-in-chief because the Government bears the burden of proving Defendant's intent to distribute controlled substances. *See United States v. Williams*, Crim. No. 23-690, 2024 WL 3540519, at *2 (D.N.J. July 23, 2024) ("The government may introduce [Rule 404(b)] evidence during its case-in-chief, rather than waiting until the conclusion of the defendant's case, as long as it is apparent that intent will be in dispute." (quoting *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987))); *Caputo*, 808 F.2d 963 at 968 ("[T]he government was required to prove that appellants possessed the account numbers with intent to defraud. . . . The element of intent was thus clearly at issue, and evidence of appellants' involvement with previous credit card schemes was therefore probative of their intent in possessing the 'access devices' for which they were charged."); *United States v. Curry*, Crim. No. 04-280, 2006 WL 8433577, at *1 (D.N.J. May 19, 2006) (where defendants were

8

### B.  Phone Calls from July 5, 2022 (Government's Exhibits 214 through 216)

The Government also seeks to admit evidence of three phone calls between Defendant and Wilson from the day of Defendant's arrest. The Government argues that these phone calls are intrinsic to the charged offense, and therefore outside of the scope of Rule 404(b). (ECF No. 257 at 13.) *See United States v. Swan*, 707 F. App'x 99, 106 (3d Cir. 2017) ("Rule 404(b) does not extend to evidence of acts which are intrinsic to the charged offense.") (citation omitted).

The Government submits that the calls at issue involve Defendant agreeing to meet Wilson at Garfield Park to purchase drugs:

**10:06:30 a.m.-10:06-49 a.m.**

DEFENDANT: Yo, my boy.

WILSON: Yo, my boy.

DEFENDANT: You popping out this morning?

WILSON: Yeah. Yeah shit I'm gonna . . .

DEFENDANT: Alright.  Give me uh, 4 and 1 then.

WILSON: Alright.

DEFENDANT: Alight.

**12:05:38 p.m.-12:05:51 p.m.**

DEFENDANT: Yo.

WILSON: Yo, my boy.  You up top?

DEFENDANT: Yo.

---

charged with possession with intent to distribute controlled substances, permitting the Government to introduce evidence of the defendants' convictions and prior bad acts in its case-in-chief as probative of the defendants' "intent, knowledge, and absence of mistake or accident"); *see also United States v. Williams*, 507 F. Supp. 3d 181, 190 (D.D.C. 2020), *aff'd sub nom. United States v. Douglas*, 72 F.4th 332 (D.C. Cir. 2023) ("The government is allowed to admit 404(b) evidence in the government's case-in-chief in anticipation that a defendant will deny intent or knowledge.")

9

WILSON: You up top?

DEFENDANT: Yeah.

WILSON: Meet me in the park, bitch.  I'll be in the park.

DEFENDANT: Alright.

WILSON: Alright.

**12:17:30 p.m.-12:17:48 p.m.**

DEFENDANT: What up boy?

WILSON: I'm here my boy.

DEFENDANT: I am too.

WILSON: Where you at?

DEFENDANT: Looking right at you.  I'm in the park bro.

WILSON: I don't see you.  Bitch, you sittin', oh I see you.

[(ECF No. 257 at 17-19.)]

The Third Circuit has held that two "narrow" categories of evidence qualify as intrinsic. *Green*, 617 F.3d at 248.  "First, evidence is intrinsic if it 'directly proves' the charged offense." *Id.* (explaining that if "uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime" under Rule 404(b)).  "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).

The Government contends that the phone calls from the day of Defendant's arrest are intrinsic under both categories (*i.e.*, they directly prove the charged offense and facilitated the commission of the crime).  First, the Government argues that the calls prove that Defendant had

an intent to possess the drugs that were found in his pockets at the time of his arrest. Second, the Government submits that the calls explain how Defendant came into possession of the drugs.

The Court finds that the phone calls from July 5, 2022, are intrinsic to the charged offense as they show that Defendant intended to possess the drugs he was arrested with that day. Moreover, the Court finds the phone calls show how Defendant obtained the drugs. *See United States v. Velasquez*, 304 F.3d 237, 245 (3d Cir. 2002) ("As in almost all drug trafficking cases, the use of telephones is an integral part of the offense. Case law reveals the overwhelming number of convictions where telephone conversations were a significant evidentiary factor in obtaining convictions."); *United States v. Lackey*, Crim. No. 17-269, 2019 WL 6464656, at *5 (M.D. Pa. Dec. 2, 2019) ("[T]ext messages describing [the defendant's] efforts to package and distribute cocaine base directly prove elements of the charged offense of possession with intent to distribute cocaine base."); *see also United States v. Zielke*, Crim. No. 17-295, 2021 WL 1163868, at *3 (W.D. Pa. Mar. 26, 2021) ("[E]vidence of a defendant's drug sales or communications regarding same during the timeframe of a charged conspiracy are generally deemed intrinsic to the conspiracy charge.").

Accordingly, the Government's Motion *in limine* to introduce three phone calls from July 5, 2022 (Government's Exhibits 214 through 216) is granted.

### IV.   CONCLUSION

For the foregoing reasons, and other good cause shown, the Government's Motion *in limine* (ECF Nos. 257 & 259) is **GRANTED**. An appropriate Order follows.

Dated: May 7, 2025

*[signature]*

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE